**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **JESSE R. S.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 25-CV-366-JFJ** |
| | ) | |
| **FRANK BISIGNANO,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**OPINION AND ORDER**

Plaintiff Jesse R. S. seeks judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for disability benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423. In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. For the reasons explained below, the Court affirms the Commissioner's decision denying benefits. Any appeal of this decision will be directly to the Tenth Circuit Court of Appeals.

**I. General Legal Standards and Standard of Review**

"Disabled" is defined under the Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is an impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3). A medically determinable impairment "must be established by objective medical evidence," such as medical signs and laboratory findings, "from an acceptable medical source,"

such as a licensed and certified psychologist or licensed physician; the plaintiff's own "statement of symptoms, a diagnosis, or a medical opinion [is not sufficient] to establish the existence of an impairment(s)." 20 C.F.R. §§ 404.1521, 416.921. *See* 20 C.F.R. §§ 404.1502(a), 404.1513(a), 416.902(a), 416.913(a). A plaintiff is disabled under the Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (explaining five steps and burden shifting process). To determine whether a claimant is disabled, the Commissioner inquires: (1) whether the claimant is currently working; (2) whether the claimant suffers from a severe impairment or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"), whether the impairment prevents the claimant from continuing his past relevant work; and (5) considering assessment of the RFC and other factors, whether the claimant can perform other types of work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). If a claimant satisfies his burden of proof as to the first four steps, the burden shifts to the Commissioner at step five to establish the claimant can perform other work in the national economy. *Williams*, 844 F.2d at 751. "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Id.* at 750.

In reviewing a decision of the Commissioner, a United States District Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance "and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See id.* A court's review is based on the administrative record, and a court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.* at 1262. A court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II. Procedural History and the ALJ's Decision

Plaintiff, then a 31-year-old male, applied for Title II disability insurance benefits on March 16, 2023, alleging a disability onset date of January 5, 2023. R. 76. Plaintiff claimed he was unable to work because he suffered from "Bipolar Disorder, Post Traumatic Stress Disorder, [and] Generalized Anxiety Disorder." *Id.* Plaintiff's claim for benefits was denied initially and on reconsideration. R. 93-97, 105-08. Plaintiff then requested a hearing before an ALJ, and the ALJ conducted an in-person hearing on July 18, 2024. R. 41-63. The ALJ issued a decision on August 19, 2024, denying benefits and finding Plaintiff not disabled because he could perform other work existing in the national economy. R. 20-22. The Appeals Council denied review, and Plaintiff appealed to this Court. R. 1-3; ECF No. 2.

The ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through March 31, 2027. R. 12. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of January 5, 2023. *Id*. At step two, the ALJ found that Plaintiff had the following severe impairments: Obesity; Depressive Disorder including Bipolar Disorder; Anxiety Disorder including Obsessive Compulsive Disorder; and Post-Traumatic Stress Disorder ("PTSD"), including dissociative symptoms. R. 13. The ALJ found that Plaintiff had a non-severe impairment of tinnitus. *Id.* At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. R. 14-16. In assessing Plaintiff's mental impairments under the "paragraph B" criteria, the ALJ found that Plaintiff had moderate limitations in (1) understanding, remembering, or applying information, (2) interacting with others, (3) concentrating, persisting, or maintaining pace, and (4) adapting or managing oneself. R. 18-19.

After evaluating the objective and opinion evidence and Plaintiff's statements, the ALJ concluded that Plaintiff had the RFC to perform medium work with the following limitations:

> [Plaintiff cannot] frequently climb, balance, stoop, kneel, crouch, and crawl as those terms are defined in the Selected Characteristics of Occupations (SCO); no commercial driving; can understand, remember, and carry out simple and detailed tasks, but not complex tasks; can adapt to occasional changes in work processes and environment; no production rate pace but can perform end of the day goals; no job duties requiring work with the general public; occasional interaction with coworkers and supervisors; and no tandem tasks.

R. 16. At step four, the ALJ found that Plaintiff had no past relevant work. R. 20. At step five, based on the testimony of a vocational expert ("VE"), the ALJ found that Plaintiff could perform other occupations existing in significant numbers in the national economy, such as produce packer; garment hanger; salvager; pricer; garment bagger; laundry folder; polisher; filler; and trimmer. R. 21. The ALJ determined the VE's testimony was consistent with the information contained in the Dictionary of Occupational Titles ("DOT"). R. 21-22. Based on the VE's

testimony, the ALJ concluded these positions existed in significant numbers in the national economy. R. 22. Accordingly, the ALJ concluded that Plaintiff was not disabled. *Id*.

## III. Issues

Plaintiff raises three points of error in his challenge to the denial of benefits: (1) the ALJ erred by "playing doctor" to use her own lay opinion to assess Plaintiff's mental limitations; (2) the ALJ failed to develop the record despite finding ambiguity; and (3) the RFC was not based on substantial evidence.

## IV. Analysis

### A. ALJ Appropriately Relied on Mental Health Records in Developing RFC

Plaintiff contends that the ALJ improperly crafted the RFC's mental limitations without the assistance of any medical opinions by evaluating the records and raw medical data on her own. ECF No. 11 at 15. Plaintiff argues that the ALJ's decision is in error because it contains no discussion of the evidence regarding his mental limitations and difficulties with "leaving the house, making decisions and maintaining concentration, managing his cleanliness with tasks such as washing hands, bathing, and shaving, and interacting with others." ECF No. 11 at 17. Plaintiff points to his testimony, his mother's third-party function reports, and a 2023 medical report from the University of Oklahoma to show that he is more mentally limited than the mental RFC. *Id.* at 18-20.

"The ALJ may not substitute his own opinion for that of Plaintiff's doctor." *Miller v. Chater*, 99 F.3d 972, 977 (10th Cir. 1996) (citation modified); *see also Kemp v. Bowen*, 816 F.2d 1469, 1476 (10th Cir. 1987) ("While the ALJ is authorized to make a final decision concerning disability, he cannot interpose his own 'medical expertise' over that of a physician . . . ."). However, an ALJ is not required to have a specific RFC opinion to assess Plaintiff's functional

limitations. *See Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) (explaining that "there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question"); *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004) ("The ALJ, not a physician, is charged with determining a claimant's RFC from the medical record.") (citation modified).

Here, the ALJ considered the opinions of two state agency examiners and a consultative examiner ("CE") but found them unpersuasive. R. 19-20. The ALJ found that the state agency examiners' opinions, initially and on reconsideration, were not consistent with Plaintiff's "testimony or reports of ongoing symptoms despite fairly effective medication management." R. 19. The ALJ found that Judy Wagga, PMHNP's ("Ms. Wagga") treatment notes revealed "alert/oriented presentation, well groomed appearance, realistic judgment, and normal insight." *Id.* (citing R. 476, 548, 595). The ALJ further found that Plaintiff "attained his GED, he completed some college classes, and he completed on the job training as a forklift operator"; he had multiple recorded "normal mental status examinations" from March through May 2024; and Plaintiff's "medication regime[n] was stable [on] Lexapro 20mg one time a day." *Id.* (citing R. 593-620). The ALJ also considered Plaintiff's CE with Andrea Sapp, MS, LPC ("Ms. Sapp") on December 27, 2023. The ALJ noted Ms. Sapp's findings that Plaintiff

> evidenced slight deficit in delayed recall but demonstrated clear, coherent, and logical thought content and processes and ability to respond to interview questions immediately and directly and reason abstractly. He was cooperative, made appropriate eye contact, had normal speech, communicated effectively, exhibited good attention and concentration, presented as oriented and with appropriate dress, and gave an appropriate response to a hypothetical judgment situation.

R. 18-19 (citing R. 431-32).

The ALJ also recited Ms. Sapp's finding that Plaintiff's "ability to understand, remember and carry out simple and detailed instructions in a work-related environment is rated as marginal

to good." R. 20 (citing R. 433). The ALJ found the opinion of the CE unpersuasive and unsupported by Plaintiff's normal "longitudinal mental status examinations"; his "stable" medication regimen of Lexapro; his academic and work history, and his interest "in pursuing continued education in a computer related certification with a focus on technology and cybersecurity." R. 20 (citing R. 562). The ALJ also stated that Ms. Sapp was not an acceptable medical source because she was a Licensed Professional Counselor ("LPC"), and that her opinion was vague because it "presents quite a range of functional possibilities between 'marginal' and 'good.'" *Id.*

The record also contained a state agency examiner's opinion from his 2016 application for social security disability benefits. The ALJ found that the opinion was neither relevant nor persuasive because "it does not pertain to the claimant's current application and functional abilities"; the "medical consultants did not have the opportunity to review the record during the period of adjudication"; and there was "new evidence at the hearing level that was not consistent with [the] opinion." *Id.*

The ALJ meticulously outlined Plaintiff's mental health treatment from Ms. Wagga from June 2022 through July 5, 2024. As stated by the ALJ, Plaintiff's treatment in 2022 from Ms. Wagga began with presentation of "depression, excessive sleep, panic attacks, anxiety, irritability, isolating behavior, obsessions, difficulty making decisions, overeating and weight gain, past trauma, intrusive thoughts, and dissociation." R. 17 (citing R. 342). The ALJ noted that Ms. Wagga "made several medication adjustments in 2022." *Id.* (citing R. 342-62).

The ALJ then outlined the variability of Plaintiff's mental health that occurred in 2023. Plaintiff "reported he was doing well on Lexapro, although he was dissociating frequently"; he left his house for the first time "in a long time"; he stated that "Lexapro was helpful"; and

"reported his mental health was stable, as both anxiety and depression had decreased." *Id.* (citing R. 342-62, 469-500). The ALJ also described how Plaintiff's treatment record revealed setbacks to his mental health, including: Plaintiff's primary care provider "increased the dosage of Lexapro after he reported anxiety severe enough to interfere with activities of daily living and his ability to leave the house"; and Plaintiff "experienced a mental breakdown . . . with increased anxiety, panic attacks, and depression, intrusive thoughts, and increased sleep." *Id.* (citing R. 436, 440, 452). The ALJ stated that around the same time, Ms. Wagga increased Plaintiff's Lexapro dosage and prescribed Zyprexa and Propranolol. R. 17-18 (citing R. 479-81).

Finally, the ALJ outlined Plaintiff's most recent mental health treatment in 2024. Plaintiff told Ms. Wagga that his mood "improved significantly with the addition of Zyprexa" and Ms. Wagga noted Plaintiff's mental health status "had 'improved markedly' on his current medications." R. 18 (citing R. 475). The ALJ noted that Plaintiff "continued to report improved symptoms on February 13," but he reported worsening anxiety and anxiety-related symptoms on February 29 and March 26. *Id.* (citing R. 511). However, the ALJ stated Plaintiff was taking Lexapro at a lower dose than the prescribed dosage. *Id.* The ALJ stated that, on July 5, 2024, Plaintiff "endorsed heightened anxiety and obsessive-compulsive behaviors when he showered, difficulty leaving the house, and feelings of guilt." *Id.* (citing R. 599). However, "his sleep pattern had returned to normal, panic attacks had decreased, activity level had increased . . . and his mood was stable." *Id.* (citing R. 599). The ALJ also noted that Plaintiff "affirmed that his medications were effectively managing symptoms of anxiety and depression." *Id.* (citing R. 599).

Contrary to Plaintiff's contention, the ALJ did not rely on her own lay opinion but reviewed and analyzed Plaintiff's mental health treatment records. R. 17-19. Further, the ALJ reviewed the two state agency examiners' opinions and the CE and stated why they were

unpersuasive by addressing their supportability and consistency with the record evidence. R. 19-20. Because the ALJ considered and relied upon the entirety of the evidence in the record, including the evidence laid out above, she did not violate any legal standards when crafting the RFC.

**B. ALJ Adequately Developed the Record**

Plaintiff argues that the ALJ failed to develop the record by not obtaining a second psychological CE to address the severity of Plaintiff's mental limitations. ECF No. 11 at 16-17. Although Plaintiff had a CE with Ms. Sapp on December 27, 2023, Plaintiff argues that an additional CE was necessary because the ALJ found the two state agency examiner opinions and the CE in the record "vague" regarding Plaintiff's mental capability. *Id.* at 16. Plaintiff contends that the ALJ was required to order a CE because of a "conflict, ambiguity, or other insufficiency in the medical record." *Id.*

"The ALJ has a basic obligation in every social security case to ensure that an adequate record is developed during the disability hearing consistent with the issues raised." *Cowan v. Astrue*, 552 F.3d 1182, 1187 (10th Cir. 2008) (quoting *Henrie v. U.S. Dep't of Health & Hum. Servs.*, 13 F.3d 359, 360-61 (10th Cir. 1993)). "This is true despite the presence of counsel, although the duty is heightened when the claimant is unrepresented." *Id.* "The duty is one of inquiry, ensuring that the ALJ is informed about facts relevant to his decision and learns the claimant's own version of those facts." *Id.* "The ALJ does not have to exhaust every possible line of inquiry in an attempt to pursue every potential line of questioning." *Hawkins v. Chater*, 113 F.3d 1162, 1168 (10th Cir. 1997). Instead, the "standard is one of reasonable good judgment." *Id.*

An ALJ may elect to develop the record by obtaining a CE. *See* 20 C.F.R. § 404.1519a(b) (explaining that "[w]e may purchase a [CE] to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to . . . determin[e] . . . your claim"); 20 C.F.R. § 404.1512(b)(2) ("Generally, we will not request a [CE] until we have made every reasonable effort to obtain evidence from your own medical sources."). A CE is "often required" where (1) "there is a direct conflict in the medical evidence requiring resolution," (2) "the medical evidence in the record is inconclusive," or (3) "additional tests are required to explain a diagnosis already contained in the record." *Hawkins*, 113 F.3d at 1166. The Tenth Circuit has held that an "ALJ should order a [CE] when evidence in the record establishes the reasonable possibility of the existence of a disability and the result of the [CE] could reasonably be expected to be of material assistance in resolving the issue of disability." *Id.* at 1169. Generally, an ALJ has "broad latitude in ordering [CEs]." *Id.* at 1166.

The ALJ found that the administrative medical findings at the initial level and on reconsideration used "vague" terms to describe Plaintiff's mental capabilities. R. 19. At the initial level, the state agency examiner found:

> [Plaintiff] is able to interact ***appropriately*** with coworkers and supervisors for ***incidental*** work purposes. ***Limited*** from general public. [Plaintiff] is able to adapt to work setting and ***some*** forewarned changes in work settings.

R. 81 (emphasis added). The ALJ found that the use of the terms "appropriately"; "incidental"; "limited"; and "some" were vague. R. 19. The state agency examiner at the reconsideration level agreed with the findings of the initial state agency examiner, except that the reconsideration examiner found Plaintiff more limited in the areas of maintaining concentration on complex tasks and interacting with coworkers and supervisors. Specifically, the reconsideration examiner found:

> [d]ue to periodic uncontrolled psychological symptoms, [Plaintiff] may have ***some*** difficulty maintaining concentration for complex tasks and may experience ***some*** lapses on some tasks that require sustained attention. [Plaintiff] is able to interact on a ***superficial*** basis with coworkers and supervisors for ***incidental*** work purposes. ***Limited*** from general public. [Plaintiff] is able to adapt to work setting and ***some*** forewarned changes in work settings.

R. 90 (emphasis added). The ALJ found that the terms "superficial"; "incidental"; "limited"; and "some" were vague. R. 19. The ALJ disagreed with both state agency examiners' opinions because they were not consistent with Plaintiff's testimony, findings by medical providers, the longitudinal record of mental status examinations, and Plaintiff's academic and work history. *Id.* Plaintiff's mental health records, which supported the ALJ's RFC, were detailed above in Section IV.A. The third state agency examiner opinion from 2016 was also described above, including why the ALJ declined to adopt it.

In addressing the CE from Ms. Sapp, the ALJ found that it was vague in describing the range of Plaintiff's mental functional capabilities. Ms. Sapp found that Plaintiff's ability to "understand, remember and carry out simple and detailed instructions in a work-related environment is rated as marginal to good." R. 433. The ALJ stated that Ms. Sapp's opinion presented "quite a range of functional possibilities between 'marginal' and 'good.'" R. 20.

The Court finds no legal error. In spite of the ALJ's finding that the medical opinions in the record used vague terms, she was not required to order a second CE to develop the record. The record fully detailed Plaintiff's mental state and capacity from June 2022 to July 2024, as explained in Section IV.A. Contrary to Plaintiff's arguments, the ALJ did not need a specific "RFC" opinion from a CE or other medical professional to assess Plaintiff's functional limitations. *See Chapo*, 682 F.3d at 1288 (there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question"). The burden to fully develop the record was met in this case, and the ALJ had more

than sufficient information to determine Plaintiff's RFC based on medical treatment records and Plaintiff's testimony of improved mental health status on his current medication.

In addition, "the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored, and the ALJ may ordinarily require counsel to identify the issue or issues requiring further development." *Branum v. Barnhart*, 385 F.3d 1268, 1271 (10th Cir. 2004) (quotations omitted). Here, Plaintiff was represented by counsel at the hearing but did not challenge the sufficiency of the record at that time or request a consultative examination related to his physical or mental impairments. R. 43-63, 59 (Plaintiff's attorney affirmatively stated the record was complete). *See Hawkins*, 113 F.3d at 1168 ("In the absence of such a request by counsel, we will not impose a duty on the ALJ to order a consultative examination unless the need for one is clearly established in the record.").

**C. Mental RFC Was Supported by Substantial Evidence**

Plaintiff argues that the mental RFC is not supported by substantial evidence because the ALJ failed to incorporate additional mental limitations into the RFC. Plaintiff also argues that the ALJ did not provide an adequate narrative explanation to support the RFC. Plaintiff further contends that the VE's testimony was not substantial evidence because the ALJ's hypothetical question to the VE was based upon a fatally flawed RFC.

A claimant's RFC is his "*maximum* remaining ability to do sustained work activities in an ordinary work setting" for 8 hours a day, 5 days per week despite his medical impairments and symptoms. Social Security Ruling 96-8p, at *2. In assessing the RFC, the ALJ must "include a narrative discussion describing how the evidence supports each conclusion" as to the claimant's work-related limitations. *Id.* at *7. In other words, the ALJ must explain the basis for the

limitations included in the RFC assessment with citations to "specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* Additionally, the ALJ must "explain how any material inconsistencies or ambiguities in the evidence . . . were considered and resolved." *Id.* If the RFC conflicts with a medical source opinion, the ALJ must "explain why the opinion was not adopted." *Id.*

Plaintiff argues that his testimony, his mother's third-party function reports, and medical evidence are consistent with a more limited mental RFC to account for his difficulties in (1) making decisions and maintaining concentration; (2) maintaining his own hygiene and cleanliness; and (3) interacting with others. ECF No. 11 at 18-20. Plaintiff does not state what mental limitation should have been included in the RFC, but that the evidence is consistent with mental limitations accounting for each difficulty. *Id.* Plaintiff contends that his difficulty interacting with others requires a mental limitation restrictive enough that it would be "work preclusive." ECF No. 11 at 20. Plaintiff also argues that the ALJ ignored such evidence in fashioning the mental limitations in the RFC.

In finding that Plaintiff could perform a reduced range of medium work, the ALJ discussed (1) Plaintiff's testimony regarding his mental health symptoms; (2) two years of mental health treatment records from Ms. Wagga; (3) a CE from Ms. Sapp; and (4) two third-party function reports from Plaintiff's mother regarding the severity of Plaintiff's symptoms. The ALJ's discussion of the mental health treatment records, the CE, and the third-party function reports was addressed above in Section IV.A. The ALJ also thoroughly discussed Plaintiff's testimony of his mental health symptoms. Plaintiff testified that he: "does not believe he could live on his own"; "cannot work due to mental symptoms"; suffers from "depressed mood, feelings of guilt, decreased energy, variable sleep difficulty engaging in everything, isolating behavior, barely

leaving his house except to attend doctor appointments, racing thoughts, and difficulty making decisions due to anxiety about making a mistake"; and "typically relies on someone else to cook for him because he worries about making a mistake." R. 16-17 (citing hearing testimony). Plaintiff testified that a typical day for him involves waking up and determining if any household chores need to be done, checking on the dogs, watching television, reading, and playing multiplayer video games. R. 17 (citing hearing testimony).

Based on all of the record evidence, the ALJ concluded that the mental limitations assigned in the RFC were supported by Plaintiff's symptoms stabilizing on his medication, the fact that Plaintiff did not receive treatment in the ER or hospital for "any exacerbation of symptoms," and Plaintiff's "overwhelmingly unremarkable mental status examinations." R. 19. The ALJ provided a sufficient narrative discussion, and the RFC was supported by substantial evidence.

Plaintiff contends that, because the RFC was "fatally flawed," the VE's testimony regarding what jobs Plaintiff is capable of performing is not substantial evidence. It is well-settled that a VE's testimony may provide substantial evidence to support an ALJ's findings regarding the jobs a claimant can perform *only* where the hypothetical posed to the VE "reflect[s] with precision all of [the claimant's] impairments" and functional limitations that are "borne out by the evidentiary record." *Decker v. Chater*, 86 F.3d 953, 955 (10th Cir. 1996). Because the ALJ did not fail to include any limitations in the RFC, the hypothetical question to the VE was sufficient. *Suttles v. Colvin*, 543 F. App'x at 825 ("[W]e reject Mr. Suttles' objections to the ALJ's RFC determination, which in turn undercuts his objection to the ALJ's use of the [vocational expert].").

**V. Conclusion**

The Commissioner's decision finding Plaintiff not disabled is **AFFIRMED**.

**SO ORDERED** this 25th day of September, 2026.

**JODI F. JAYNE, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**